1  ALEXANDER B. CVITAN (SBN 81746)
   E-mail: alc@rac-law.com
2  MARSHA M. HAMASAKI (SBN 102720), and
   E-mail: marshah@rac-law.com;
3  PETER A. HUTCHINSON (SBN 225399)
   E-mail: peterh@rac-law.com,
4  REICH, ADELL & CVITAN, A Professional Law Corporation
   3550 Wilshire Blvd., Suite 2000
5  Los Angeles, California 90010-2421
   Telephone: (213) 386-3860; Facsimile: (213) 386-5583
6
7  Attorneys for Plaintiff

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10

| 11 CONSTRUCTION LABORERS | **CASE NO.:** |
|---|---|

11  CONSTRUCTION LABORERS
    TRUST FUNDS FOR SOUTHERN
12  CALIFORNIA ADMINISTRATIVE
    COMPANY, a Delaware limited
13  liability company,

14                          Plaintiff,

15              v.

16

17  KINETIC SAWING & CORING, INC.,
    a California corporation; INTERSTATE
18  CONCRETE CUTTING, INC., a
    California corporation; JULIO SOTO
19  JR., an individual; JOSE LUIS
    HERNANDEZ, an individual;
20  HUDSON INSURANCE COMPANY,
    a Delaware corporation; DOE 1 through
21  DOE 5, inclusive.

22

23                          Defendants.

24

25

26

27

28

**CASE NO.:**

**COMPLAINT FOR:**

1. **MONETARY DAMAGES OF UNPAID FRINGE BENEFIT CONTRIBUTIONS AND RELATED DAMAGES DUE TO EMPLOYEE BENEFIT PLANS;**
2. **SPECIFIC PERFORMANCE OF OBLIGATION TO PRODUCE RECORDS FOR AUDIT;**
3. **INJUNCTIVE RELIEF COMPELLING SUBMISSION OF FRINGE BENEFIT CONTRIBUTIONS TO EMPLOYEE BENEFIT PLANS;**
4. **FOR BREACH OF FIDUCIARY DUTIES;**
5. **BREACH OF SETTLEMENT AGREEMENT;**
6. **RECOVERY AGAINST LICENSE BOND**

[29 U.S.C. §§ 1132(g)(2) and 1145; 29 U.S.C. § 1132(a)(3); 29 U.S.C. § 185,  28 U.S.C. § 1367(a)]

Plaintiff, Construction Laborers Trust Funds for Southern California

357198.1

Administrative Company, a Delaware limited liability company, alleges:

## INTRODUCTION

1.      This action is brought by a fiduciary administrator on behalf of employee benefit plans against employers in accordance with the terms and conditions of the plans, collective bargaining agreements to which the employer is bound and applicable statutes to: (1) recover unpaid monthly employee fringe benefit contributions and related damages due to the plans by the employers (Claim 1); (2) compel the employers to produce records for an audit to determine if additional amounts are due (Claim 2); (3) to compel the employers to timely and fully report and pay its monthly fringe benefit contributions to the plans on behalf of their employees (Claim 3); (4) for breach of fiduciary duties to the plans; (5) for breach of a settlement agreement (Claim 5); and (6) to recover against a license bond surety pursuant to state law (Claim 6).

## JURISDICTION AND VENUE

2.      This Court has jurisdiction pursuant to: sections 502(g)(2) and 515 of the Employee Retirement Income Security Act (ERISA) (codified at 29 U.S.C. §§ 1132(g)(2) and 1145); section 502(a)(3) of ERISA (codified at 29 U.S.C. § 1132(a)(3)); and section 301 of the Labor Management Relations Act (LMRA) (codified at 29 U.S.C. § 185).  This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over the Fifth and Sixth Claims arising under California law, as all claims arise from a common core of transactions, and seek payment of overlapping damages.  Pursuant to section 502(e)(2) of ERISA (codified at 29 U.S.C. § 1132(e)(2)),  venue is proper in this district in that the plans are administered in this district; the employer's performance and breaches took place in this district; and the

employers reside or can be found in this district.

## **PARTIES**

3.     Plaintiff ( also referred to as "CLTF") is an administrator of, agent for collection for, a fiduciary to, and brings this action on behalf of, the following employee benefit plans: Laborers Health And Welfare Trust Fund For Southern California, Construction Laborers Pension Trust For Southern California, Construction Laborers Vacation Trust For Southern California, Laborers Training And Re-Training Trust Fund For Southern California,  Fund For Construction Industry Advancement,  Center For Contract Compliance, Laborers Contract Administration Trust Fund For Southern California,  Laborers' Trusts Administrative Trust Fund For Southern California and Southern California Partnership For Jobs Trust Fund;  San Diego County Construction Laborers Pension Trust Fund, San Diego Construction Advancement Fund 2003, and Southern California Partnership For Jobs Trust Fund (collectively "TRUST FUNDS").  Each of the TRUST FUNDS is an express trust created by written agreement, an employee benefit plan within the meaning of section 3(3) of ERISA (29 U.S.C. § 1002(3)), and a multi-employer plan within the meaning of section 3(37)(A) of ERISA (29 U.S.C. § 1002(37)(A)).  Each of the TRUST FUNDS exists pursuant to ERISA and section 302 of the LMRA (29 U.S.C. § 186).  CLTF and the TRUST FUNDS' principal places of business are in the County of Los Angeles, State of California.

4.     Plaintiff is informed and believes, and on that basis alleges, that defendant KINETIC SAWING & CORING, INC. ("KINETIC") is a corporation organized and existing under, and by virtue of, the laws of the State of California that has its principal place of business in the City of Riverside, County of Riverside, State of California and which does and at relevant times did business in the State of California as a construction contractor in an industry affecting interstate commerce.

-3-

5.      Plaintiff is informed and believes, and on that basis alleges, that defendant INTERSTATE CONCRETE CUTTING, INC. ("INTERSTATE.") is a corporation organized and existing under, and by virtue of, the laws of the State of California that has its principal place of business in the City of Riverside, County of Riverside, State of California and which does and at relevant times did business in the State of California as a construction contractor in an industry affecting interstate commerce.

6.      Plaintiff is informed and believes, and on that basis alleges, that defendant, JOSE LUIS HERNANDEZ, ("HERNANDEZ") is an individual who is engaged in business in the City of Riverside, County of Riverside, State of California was and still is the principal and responsible managing officer of KINETIC, and who was, during time periods mentioned herein below, the qualifying officer for the contractors state licenses issued to KINETIC, and INTERSTATE, and who was the chief executive officer and responsible managing officer, and principal of INTERSTATE, and did business in California as a construction contractor under KINETIC and INTERSTATE in an industry affecting interstate commerce.

7.      Plaintiff is informed and believes, and on that basis alleges, that defendant, JULIO SOTO, JR. ("SOTO") is an individual who is engaged in business in the City of Riverside, County of Riverside, State of California and was and still is the principal, chief executive officer and responsible managing officer of INTERSTATE, and who, during relevant times mentioned hereinbelow, was the chief executive officer and principal of KINETIC, and did business in California as a construction contractor  under KINETIC and INTERSTATE in an industry affecting interstate commerce.

8.      Plaintiff is informed and believes and thereupon alleges that defendant, HUDSON INSURANCE COMPANY ("HUDSON") is a Delaware corporation, licensed and authorized to perform and transact a surety business in the State of California, with its principal place of business in the City of New York, State of New

-4-

357198.1

York.

9.     The true names and capacities, whether individual, corporate, associate, or otherwise of defendants named herein as DOE 1 through DOE 5, inclusive are unknown to CLTF, who therefore sue said defendants by such fictitious names, and CLTF will amend this Complaint to show their true names and capacities when the same have been ascertained.

## **INDIVIDUAL DEFENDANTS**

10.     Plaintiff is informed and believes and thereon alleges that at all times material herein, that HERNANDEZ, SOTO, and or DOE 1 through DOE 5, inclusive, were and/or continue to be fiduciaries and/or parties in interest to the TRUST FUNDS as defined in 29 U.S.C. §§ 1002(14), and 1002(21)(A), for the reasons more fully described below and in the Fourth Claim for Relief.

11.     Plaintiff is informed and believes and thereon alleges that HERNANDEZ, SOTO and/or DOE 1 through DOE 5, inclusive, during times periods where amounts are claimed against KINETIC and INTERSTATE, were or still are jointly responsible for running the day to day operations of KINETIC and INTERSTATE and were and/or are responsible for decisions pertaining to the reporting and payment of contributions to the TRUST FUNDS, and that they personally maintained control of those funds which should have been turned over to the TRUST FUNDS.

12.     Plaintiff is informed and believes and thereon alleges that at all times herein, HERNANDEZ, SOTO and/or DOE 1 through DOE 5, inclusive during times periods where amounts are claimed against KINETIC and INTERSTATE, were or are the majority shareholders of KINETIC and INTERSTATE and beneficial owners of KINETIC and INTERSTATE.

13.     Plaintiff is informed and believes and thereon alleges that

-5-

357198.1

HERNANDEZ, SOTO and/or DOE 1 through DOE 5, inclusive during times periods where amounts are claimed against KINETIC and INTERSTATE acted on behalf of and in the interest of KINETIC and INTERSTATE in all aspects of labor relations, dealings with employees, their assignment of work, and rates of compensation, in determining which employees KINETIC would report to the TRUST FUNDS, the number hours upon which contributions would be reported to the TRUST FUNDS and in dealings and relations with the TRUST FUNDS, and/or the UNION.

## **AGREEMENTS**

14.     KINETIC is, and at all relevant times was (including from at least since December 1, 2012), bound to certain collective bargaining agreements of the Southern California District Council of Laborers and its affiliated local Unions (collectively "Laborers Union") known as the Construction Master Labor Agreements, including ones known as the Southern California Master Labor Agreement and the AGC Master Labor Agreements.

15.     Pursuant to the Construction Master Labor Agreements, employers become – and KINTETIC became – bound to the terms and conditions of the various trust agreements that created each of the TRUST FUNDS ("Trust Agreements"). When referenced collectively hereinafter, the Construction Master Labor Agreements and Trust Agreements are referred to as "the Agreements."

16.     Plaintiff is informed and believes, and on that basis alleges that SOTO formed INTERSTATE and KINETIC, and has controlled aspects of the operation of both INTERSTATE and KINETIC, jointly with HERNANDEZ.

17.     Plaintiff is informed and believes, and on that basis alleges, that both INTERSTATE and KINETIC, whether portrayed as INTERSTATE or KINETIC provided the same services with the same or essentially the same work force under the same working conditions, using the same machinery, equipment, and methods of

-6-

357198.1

production, the same supervisors and conducted their business from the same physical location.  Plaintiff is further informed and believes, and on that basis alleges, that there exists, and at all times existed, a substantial continuity of the business operations of KINETIC'S and INTERSTATE'S businesses such that recognition of any individuality and separateness between them promotes and perpetuates a fraud upon and/or promotes injustices to their employees and creditors, including the TRUST FUNDS.

18.     Based on information and belief, including the allegations set forth herein, Plaintiff is informed and believes, and on that basis alleges, that both KINETIC and INTERSTATE are bound to the terms of the Agreements and jointly and severally liable for the obligations and debts of both, including those arising from the Agreements (and specifically those related to the TRUST FUNDS), because they are not separate entities, but are a single business, joint employers, alter egos of each other.  In addition, the MLA specifically provides that: "Each individual contractor, whether corporate or other legal entity, or its successor, shall be liable under, subject to and bound by this Agreement"; and that for purposes of delinquency to the TRUST FUNDS, a contractor bound to the Agreement includes "all entities of the delinquent contractor, change of name, or change of entity, provided that the delinquent contractor holds at least ten (10%) percent ownership in the [second] entity."  Based on the allegations regarding the relationship between HERNANDEZ, SOTO, KINETIC and INTERSTATE set forth herein, Plaintiff alleges that KINETIC and INTERSTATE are also jointly and severally liable for the obligations of both under the terms of the Agreements (and specifically those related to the TRUST FUNDS). Based on the allegations of joint and several liability set forth herein, KINETIC and INTERSTATE are referred to collectively hereinafter as "the EMPLOYERS."

19.     Under the terms of the Agreements, employers, including the EMPLOYERS, are required to submit monthly fringe benefit contributions ("Monthly Contributions") to each of the TRUST FUNDS on behalf of their

357198.1

employees for each hour worked by (or paid for) them for work covered by the Agreements ("Covered Work").

20.     Under the terms of the Agreements, employers, including the EMPLOYERS, are required to submit to the TRUST FUNDS, with their Monthly Contributions, monthly reports, itemized by project, listing the names of their employees who performed Covered Work, their Social Security numbers, the hours of Covered Work performed by each, and the resulting Monthly Contributions due for each ("Monthly Reports").  The TRUST FUNDS rely on Monthly Reports – and the accuracy of those reports – to determine the amount of Monthly Contributions due to the TRUST FUNDS by employers and the credit toward fringe benefits to be allocated to their employees.

21.     The Agreements provide for the payment of interest on delinquent Monthly Contributions from the date due at a rate set by the trustees of the TRUST FUNDS.  The trustees have set that rate at five percent (5%) above the prime rate set by the Federal Reserve Board of San Francisco, California.  The Agreements also provide for the payment of liquidated damages for each month of delinquent Monthly Contributions or Monthly Reports, for each Trust Fund separately, in the amount of twenty percent (20%) of the delinquent Monthly Contributions due to the Trust Fund or $25, whichever is greater (except with respect to the Laborers Contract Administration Trust Fund for Southern California, which assesses liquidated damages at the greater of $20 or ten percent (10%)).  In addition, employers are required to pay fees for the submission of checks not honored by the banks upon which they are drawn.

22.     The failure of employers to pay Monthly Contributions when due causes damages to the TRUST FUNDS and its participants beyond the value of the unpaid Monthly Contributions, which are difficult to quantify.  Apart from the fees and costs incurred in litigation, the harm caused includes the cost of collecting the Monthly Contributions from employers or third parties, the cost of special processing

357198.1

to restore employee fringe benefit credits because of late Monthly Contributions, employee loss of health insurance coverage (even if later restored) and medical harm to participants and beneficiaries who might have foregone medical care when notified that their insurance ceased because of their employer's failure to pay Monthly Contributions.  The liquidated damages provision of the Agreements was meant to compensate for the loss to the TRUST FUNDS, which is incurred even if the Monthly Contributions for a given month are later paid.  It is based on the TRUST FUNDS' ratio of collection costs over amounts collected, which are regularly reported to the TRUST FUNDS' trustees.

23.     Under the terms of the Agreements, employers, including the EMPLOYERS, agree to subcontract Covered Work only to entities that are signatory to a Construction Master Labor Agreement applicable to the work performed.  If an employer subcontracts Covered Work to a non-signatory entity, or allows a subcontractor to subcontract Covered Work to a non-signatory entity, the employer becomes liable to the TRUST FUNDS in at least an amount equal to the Monthly Contributions, interest and liquidated damages that would have been due if a signatory entity had performed the Covered Work.

24.     Under the terms of the Agreements, employers, including the EMPLOYERS, agree not to subcontract Covered Work to entities that are delinquent to the TRUST FUNDS or to allow lower-tier subcontractors to perform Covered Work if they are so delinquent.  If an employer subcontracts Covered Work to an entity that is delinquent in its Monthly Reports or Monthly Contributions to the TRUST FUNDS, or allows a lower-tier subcontractor that is so delinquent to perform Covered Work, the employer becomes under the terms of the Agreements liable to the TRUST FUNDS for the Monthly Contributions due by the delinquent subcontractor and any delinquent lower-tier subcontractors.

25.     The Agreements provide the TRUST FUNDS with specific authority to examine the payroll and business records of employers, including the EMPLOYERS,

-9-

357198.1

to determine whether they have reported all hours worked by (or paid for) their employees who perform Covered Work, and whether they have paid the appropriate Monthly Contributions and other amounts due by them to the TRUST FUNDS.  The Agreements further provide that employers, including the EMPLOYERS, shall pay the TRUST FUNDS' audit fees if they are delinquent to the TRUST FUNDS.  The TRUST FUNDS have delegated the authority to perform such audits to Plaintiff.

26.     The Agreements require employers to pay the TRUST FUNDS' attorneys' fees and costs of litigation to enforce the Agreements' foregoing terms, including the Monthly Contribution, Monthly Reporting, subcontracting and audit provisions.

## FIRST CLAIM FOR RELIEF

### (For Monetary Damages of Unpaid Fringe Benefit Contributions and Related Damages Due to Employee Benefit Plans)

27.     Plaintiff repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 26 above as if fully set forth here.

28.     The EMPLOYERS have failed to submit Monthly Contributions due by it to the TRUST FUNDS.  The EMPLOYERS owe the TRUST FUNDS a known amount of $276, 535.57 for unpaid or late-paid Monthly Contributions and related damages, for amounts disclosed by audits of KINETIC'S records for unreported hours worked by employees and subcontracting violations  ("Known Delinquency"), pursuant to the Agreements and sections 502(g)(2) and 515 of ERISA (29 U.S.C. §§ 1132(g)(2) and 1145).  The Known Delinquency consists of the following amounts due for time periods covering November 2016 to February 2019: $91,749.05 in unpaid Monthly Contributions; $35,503.73 in liquidated damages; $127,109.71 in subcontracting violations, $19,148.08 in interest through March 28, 2019; $105.00 in checks returned by the bank for insufficient funds; and $2,920.00 in audit fees.

-10-

29.    Plaintiff will establish by proof at the time of trial or through dispositive motion the Known Delinquency and any additional amounts determined to be due to the TRUST FUNDS by the EMPLOYERS, including any additional Monthly Contributions, interest, liquidated damages, audit fees, fees for the submission of checks not honored by the bank upon which they were drawn, attorneys' fees and costs, and amounts owed as a result of work performed by subcontractors of the EMPLOYERS (or lower-tier subcontractors).  If deemed necessary by the Court, Plaintiff will amend its complaint to add any additional amounts determined to be due.  Any and all conditions to the EMPLOYERS' obligations under the Agreements to pay the Known Delinquency and any additional amounts due under the Agreements to the TRUST FUNDS have been met.

30.    Under the terms of the Agreements and section 502(g)(2)(D) of ERISA (29 U.S.C. § 1132(g)(2)(D)), Plaintiff is entitled to an award of its attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF

### (For Specific Performance of
### Obligation to Produce Records for Audit)

31.    Plaintiff repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 30 above as if fully set forth here.

32.    Plaintiff has requested access to the EMPLOYERS payroll and business records for the purpose of conducting an audit; however, INTERSTATE has failed and/or refused to allow the TRUST FUNDS a complete audit of its payroll and business records and KINETIC has failed to produce all records necessary to determine the full extent of the amounts due by KINETIC to the TRUST FUNDS,

33.    The TRUST FUNDS have no adequate or speedy remedy at law in that the EMPLOYERS refuse to comply with the audit of all payroll and business records

-11-

to complete the audit and TRUST FUNDS have no other way to determine the amounts owed by the EMPLOYERS.

34.     Plaintiff requests that the Court exercise its authority under 29 U.S.C. §§ 1132(g)(2)(E) and 1132(a)(3) to order the EMPLOYERS to comply with their obligations under the Agreements and ERISA to fully produce their books and records in order for Plaintiff to complete an audit to determine if additional amounts are due.

35.     An award of attorneys' fees and costs is provided for by Agreements and under sections 502(g)(1) and/or (g)(2) of ERISA (29 U.S.C. § 1132(g)(1) and/or (g)(2)).

## THIRD CLAIM FOR RELIEF

**(For Injunctive Relief Compelling Submission of Fringe Benefit Contributions to Employee Benefit Plans)**

36.     Plaintiff repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 35 above as if fully set forth here.

37.     The EMPLOYERS have repeatedly failed to timely submit Monthly Reports and Monthly Contributions, and has refused to comply with complete audits of their books and records.

38.     By reason of the EMPLOYERS' failure to comply with their Monthly Reporting and Contribution obligations, the TRUST FUNDS, its participants and/or its beneficiaries have suffered and will continue to suffer hardship and actual and impending irreparable injury and damage for at least the following reasons.  First, where Monthly Contributions are due but not paid the TRUST FUNDS lose the use of the unpaid funds (both for investment and the payment of claims).  Second, the TRUST FUNDS incur substantial costs in the special processing of Monthly Contributions that are paid, or otherwise recovered, after the date due, in order to

-12-

provide employee fringe benefit credits and restore eligibility. Third, the TRUST FUNDS incur a liability for pension benefits for employee work even if Monthly Contributions are not paid and incur liability for health insurance claims for a certain period of employer non-payment of Monthly Contributions. Fourth, the TRUST FUNDS have an obligation to take steps to collect amounts due by delinquent employers. Thus ongoing employer delinquencies result in an ongoing drain on TRUST FUNDS resources. Fifth, the amount of benefits payable to all participants and beneficiaries for health insurance and pension claims is actuarially determined on the basis of funds projected to be received from contributing employers. Employer delinquencies complicate that determination and result in a reduction of benefits to all employees. Sixth, employer delinquencies have an intangible effect on the construction industry as a whole, doing damage to the TRUST FUNDS collection mechanism; specifically, when it is discovered that one contractor is substantially delinquent to the TRUST FUNDS, contractors engaged in the same type of work may feel that they are operating at a competitive disadvantage and withhold their Monthly Contributions until that competitive disadvantage has been removed. Seventh, employees are harmed because health insurance is not provided to them and their dependents after a certain period of non-payment of Monthly Contributions on their behalf. In addition to loss of health insurance, harm caused to employees can include medical harm if they forego medical care when notified that insurance ceased because of their employer's failure to pay Monthly Contributions. Eighth, employees are also harmed in that they are entitled to vacation pay only for hours of Covered Work for which Monthly Contributions are paid. Ninth, the TRUST FUNDS have no basis for providing credits toward eligibility for pensions for unknown hours of Covered Work. Tenth, Plaintiff is informed and believe that employees are being transferred between KINETIC and INTERSTATE and the hours worked for INTERSTATE are not being reported nor Monthly Contributions paid to the TRUST FUNDS on their behalf, reducing their credits for Health and Welfare and Pension eligibility.

-13-

39.     The TRUST FUNDS have no adequate or speedy remedy at law.  They therefore request that this Court exercise its authority under sections 502(g)(2)(E) and 502(a)(3) of ERISA (29 U.S.C. §§ 1132(g)(2)(E) and 1132(a)(3)) to issue preliminary and permanent injunctive relief ordering the EMPLOYERS to comply with their obligations under the Agreements and section 515 of ERISA (29 U.S.C. § 1145) to fully disclose its employees' Covered Work on its Monthly Reports, itemized by project, and timely submit them each month with full payment of the Monthly Contributions due.

40.     An award of attorneys' fees and costs is provided for by Agreements and under sections 502(g)(1) and/or (g)(2) of ERISA (29 U.S.C. § 1132(g)(1) and/or (g)(2)).

**FOURTH CLAIM FOR RELIEF**

**DAMAGES FOR BREACH OF FIDUCIARY DUTIES**

**IN VIOLATION OF ERISA**

**(AGAINST EMPLOYERS, HERNANDEZ, SOTO**

**AND DOE 1 THROUGH DOE 5)**

41.     Plaintiff repeats and realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 40 above.

42.     Plaintiff is informed and believes and thereon alleges that HERNANDEZ, SOTO and/or DOE 1 to DOE 5, inclusive, were and still are parties in interest, the agents, managing officers, directors, managing employees,  and/or beneficial owners of the EMPLOYERS with the authority to direct, control, and/or manage the business affairs of the EMPLOYERS including the disposition of the EMPLOYERS' assets.

43.     Plaintiff is informed and believes and thereon allege that the EMPLOYERS, HERNANDEZ, SOTO and/or DOE 1 to DOE 5, inclusive, were and

-14-

357198.1

still are fiduciaries with respect to the TRUST FUNDS within the meaning of § 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), in that they exercised discretionary authority or control respecting management or disposition of assets of the TRUST FUNDS.

44.     The Agreements require that the EMPLOYERS deduct Monthly Contributions due to the CONSTRUCTION LABORERS VACATION TRUST FUND FOR SOUTHERN CALIFORNIA ("Vacation Fund") from EMPLOYERS employees' weekly paychecks, in the amounts specified.  Such deductions are "amounts that a participant has withheld from his wages by an employer, for contribution" to the TRUST FUNDS, which thus become assets of the TRUST FUNDS within the meaning of 29 C.F.R. § 2510.3-102, "as of the earliest date on which such contributions . . . can reasonably be segregated from the employer's general assets."

45.     On "public works" as defined by California Labor Code § 1720, the EMPLOYERS were required to pay a minimum "prevailing" or "per diem" wage, including amounts which could either be paid directly on the weekly paycheck to employees, or contributed as "employer payments"  (as defined in Labor Code § 1773.1) which includes payments to the TRUST FUNDS.  The EMPLOYERS employed workers on such public works, also covered by the Agreements, and certified under penalty of perjury (pursuant to Labor Code § 1776) that a portion of the required prevailing wage due such employees would be withheld from their per diem weekly wage and instead contributed to the TRUST FUNDS, in satisfaction of the prevailing wage required law.  The U.S. Department of Labor has taken the position that such amounts are "amounts that a participant has withheld from his wages by an employer, for contribution" to the TRUST FUNDS, which become assets of the TRUST FUNDS within the meaning of 29 C.F.R. § 2510.3-102, "as of the earliest date on which such contributions . . . can reasonably be segregated from the employer's general assets."

-15-

46.     Plaintiff is informed and believes that, instead of turning over Vacation Fund contributions and the portions of the prevailing wage the EMPLOYERS certified was to be paid to the TRUST FUNDS from employees' weekly paychecks, that EMPLOYERS, HERNANDEZ, SOTO and/or DOE 1 to DOE 5, inclusive, kept those amounts for their own use, and did not segregate or turn them over to the TRUST FUNDS.

47.     Plaintiff is informed and believes that HERNANDEZ, SOTO and/or DOE 1 to DOE 5, inclusive, are the persons responsible for preparing and issuing certified payroll reports to public agencies under Labor Code § 1776, and were responsible for the certification that such amounts would be paid to the TRUST FUNDS as part of the prevailing wage obligation.  Plaintiff is further informed and believes that HERNANDEZ, SOTO and/or DOE 1 to DOE 5, inclusive, had discretionary authority or control over sufficient, segregable funds to pay the amounts certified under penalty of perjury, that would be withheld from employees' weekly wages for contribution to the TRUST FUNDS in order to meet prevailing wage obligations, including the authority to write checks on the accounts in which such funds were held, but instead kept them for his own use, or for the use of the EMPLOYERS.

48.     By their discretionary authority or control over the management or disposition of assets of the TRUST FUNDS, specifically to Vacation Fund as well as the fringe benefit component of prevailing wages on public works, described above, EMPLOYERS, HERNANDEZ, SOTO and/or DOE 1 to DOE 5, inclusive, are fiduciaries of the TRUST FUNDS within the meaning of section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

49.     The amount of the delinquent Monthly Contributions referenced herein above relating to public works projects and the Vacation Fund were and still are due and owing to the TRUST FUNDS and are assets of the TRUST FUNDS within the meaning 29 U.S.C. §§ 1001-1003, 1021-1031, 1111-1114 and 18 U.S.C. § 664.  The

-16-

Vacation Fund amount and the amount of Monthly Contributions referenced herein above will be proven at the time of trial or other hearing, plus interest at the plan rate(s).

50. By failing to timely account for and turn over the assets of the TRUST FUNDS described above, by failing to apply such assets for the exclusive benefit of participants and beneficiaries of the TRUST FUNDS, and instead using those assets for their own benefit, EMPLOYERS, HERNANDEZ, SOTO and/or DOE 1 to DOE 5, inclusive, breached their fiduciary duties to the TRUST FUNDS within the meaning of sections 404(a)(1)(A), (B) and (D), of ERISA, 29 U.S.C. §§ 1104(a)(1)(A), (B) and (D).

51. Plaintiff is informed and believes and thereon alleges that the acts and omissions to act by EMPLOYERS, HERNANDEZ, SOTO and/or DOE 1 to DOE 5, inclusive, constitute misuse, misappropriation and/or conversion from employee benefit plans within the meaning of 18 U.S.C. § 664 and breach of their fiduciary obligations within the meaning of 29 U.S.C. § 1104 through §1106.

52. Pursuant to § 409 of ERISA, 29 U.S.C. § 1109, EMPLOYERS, HERNANDEZ, SOTO and/or DOE 1 to DOE 5, inclusive, are personally liable to make good to the TRUST FUNDS any losses to them resulting from each such breaches of their fiduciary duties, and to restore to the TRUST FUNDS any profits which have been made through their use of these assets of the TRUST FUNDS. Plaintiff seeks an accounting from EMPLOYERS, HERNANDEZ, SOTO and/or DOE 1 to DOE 5, inclusive, of the amount and disposition of these assets.

53. Plaintiff requests that it be awarded its costs and reasonable attorney's fees pursuant to § 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1), and such other remedies as may be available pursuant to ERISA §§ 409(a) and 502(a)(2), 29 U.S.C. §§ 1109(a) and 1132(a)(2).

/ /

/ /

357198.1

## FIFTH CLAIM FOR RELIEF
## FOR MONETARY DAMAGES FOR BREACH OF
## SETTLEMENT AGREEMENT
## (AGAINST KINETIC AND HERNANDEZ)

54.     Plaintiff repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 30, above as if fully set forth herein.

55.     The TRUST FUNDS,  KINETIC and HERNANDEZ entered into a conditional settlement ("Settlement Agreement") with respect to the known amounts owed by KINETIC on Monthly Reports by KINETIC submitted without full payment for time periods from August 2017 to October 2017  which totaled $35,924.47 within interest through November 29, 2017  ("Claim").  In and by the terms of the Settlement Agreement, the TRUST FUNDS agreed to a payment arrangement with KINETIC and HERNANDEZ upon compliance with express conditions set forth in the Settlement Agreement.

56.     Under the express terms of the Settlement Agreement, the following constitutes a default and/or breach of the Settlement Agreement by KINETIC and HERNANDEZ: (1) failure to timely remit payment of the monthly payments as provided for by the terms of the Settlement Agreement; (2) failure to comply with KINETIC'S obligations under the terms of the Agreements to timely submit Monthly Reports disclosing all of the hours worked by employees for which Monthly Contributions are due with payment of the Monthly Contributions due; and (3) failure to comply fully with an audit of KINETIC'S records.

57.     KINETIC and HERNANDEZ breached the Settlement Agreement by failing to (1) make all monthly payments due under the provisions of the Settlement Agreement; (2) by failing to timely submit timely Monthly Reports with full payment of the amounts due commencing with its January 2018  Monthly Report and the Monthly Reports thereafter for time periods through February 2019 are unpaid or not

-18-

357198.1

fully paid; and (3) the partial audits of KINETIC'S records has disclosed reporting violations.

58.     KINETIC and HERNANDEZ, individually, jointly and severally agreed to be liable for the $35,924.47  plus interest at the plan rate(s) due under the terms of the Settlement Agreement in consideration of the payment arrangement to satisfy the total amount due under the terms of the Settlement Agreement if successfully completed.

59.     As a result of KINETIC'S and HERNANDEZ'S breach of the Settlement Agreement, the conditions in the Settlement Agreement were not met and the Settlement Agreement does not bar collection of any unsatisfied amounts of that delinquency by any lawful means; therefore, under the terms of the Settlement Agreement, the full amount of the Claim, upon breach, became immediately due and owing by the KINETIC and HERNANDEZ to the TRUST FUNDS, plus interest at the TRUST FUNDS' plan rate(s) after November 29, 2017.  The amount due by the KINETIC and HERNANDEZ for their breach of the Settlement Agreement is $5,770.25 with interest to March 27, 2019  plus additional interest thereafter which has continued to accrue at the plan rate(s) until fully paid.  Any and all conditions to KINETIC'S and HERNANDEZ'S obligations under the Settlement Agreement to pay this amount have been met.

60.     Under the terms of the Settlement Agreement, Plaintiff is entitled to an award of its attorneys' fees and costs.

## SIXTH CLAIM FOR RELIEF
## AGAINST STATE CONTRACTORS LICENSE BOND
## (AGAINST HUDSON)

54.     Plaintiff repeats and realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 35, as if fully set forth.

-19-

357198.1

55.     Pursuant to various provisions of the Business and Professions Code, EMPLOYERS obtained from HUDSON, bond number 30024551 ("BOND") and filed the BOND with the Registrar of the California State Contractors License Board in the penal sum as required by statute and in favor of the State of California.

56.     TRUST FUNDS, as assignee of the various laborers' claims for recovery of the benefit portion of their wages, falls within the class or classes of claimants as set forth in California  Business and Professions Code §§ 7071.5, 7071.10 and Civil Code § 8024(b), and is a beneficiary of the BOND.

57.     Pursuant to the terms of its bonds, and provisions of California Business and Professions Code, HUDSON is responsible for paying up to the penal sum of said bonds to the TRUST FUNDS for the unpaid contribution owed on behalf of KINETIC'S employees.

**WHEREFORE, Plaintiff prays for judgment against Defendants as follows:**

**ON PLAINTIFF'S FIRST CLAIM FOR RELIEF**

1.     For $91,749.05 in unpaid Monthly Contributions, as required by the Agreements and 29 U.S.C. § 1132(g)(2)(A).

2.     For $19,148.08 in interest (through March 28, 2019) on unpaid or late paid Monthly Contributions at the rate of five percent above the variable prime rate set by the Federal Reserve Board of San Francisco, California, plus such additional interest that has or does thereafter accrues as required by the Agreements and 29 U.S.C. § 1132(g)(2)(B).

3.     For $35,503.73 in liquidated damages for each month of unpaid or late-paid Monthly Contributions at, for each of the TRUST FUNDS separately, the greater of 20% or $25 (except with respect to the Laborers Contract Administration Trust Fund for Southern California, for which liquidated damages are sought at the greater

-20-

10% or $20), as required by the Agreements and 29 U.S.C. § 1132(g)(2)(C).

  4. For subcontracting violations is the sum of $127,109.71;

  5. For $105.00 in insufficient funds check fees, as required by the Agreements and provided under 29 U.S.C. § 1132(g)(2)(E).

  6. For $2,920.00 in audit fees;

  7. For, according to proof, any additional Monthly Contributions, interest, liquidated damages, audit fees, fees incurred by the TRUST FUNDS as a result of the submission of checks not honored by the bank upon which they were drawn, and amounts owed as a result work performed by any subcontractors of the EMPLOYERS (or lower-tier subcontractors) determined to be due, pursuant to the Agreements and 29 U.S.C. §§ 1132(g)(2) and 1145.

  8. For reasonable attorneys' fees and costs of suit, as required by the Agreements and 29 U.S.C. § 1132(g)(2)(D).

  9. For such other relief that this Court deems appropriate, pursuant to any authority of the Court, including but not limited to the authority established by 29 U.S.C. §§1132(g)(2)(E) and 1132(a)(3).

## ON PLAINTIFF'S SECOND CLAIM FOR RELIEF

  1. For the issuance of injunctive relief pursuant to the Agreements and 29 U.S.C. §§ 1132(g)(2)(E) and/or 1132(a)(3) ordering KINETIC and INTERSTATE and their managing officers, managing employees, agents and successors, including HERNANEZ and SOTO, as well as all those in active concert or participation with any one or more of them, to submit to an audit of the KINETIC's and INTERSTATE's records, to fully cooperate with Plaintiff with respect to the audit in order for Plaintiff to determine the total amount due to the TRUST FUNDS by the KINETIC and INTERSTATE, and, specifically, to produce to Plaintiff the following payroll and business records – and any other records determined by Plaintiff to be necessary to conduct a full audit – for inspection, examination and copying covering

357198.1

the period from November 2016 to the date of the audit:

        1.1.    All of KINETIC's and INTERSTATE's payroll and employee records, as well as any other records that might be relevant to a determination of the work performed by the KINETIC and INTERSTATE, its employees, its subcontractors, its lower-tier subcontractors and the employees of the KINETIC's and INTERSTATE's subcontractors and lower-tier subcontractors, including but not limited to payroll journals, employee earnings records, certified payroll records, payroll check books and stubs, cancelled payroll checks, payroll time cards and state and federal tax returns (and all other state and federal tax records), as well as labor distribution journals and any other records that might be relevant to an identification of the employees who performed work for KINETIC and INTERSTATE, their subcontractors or lower-tier subcontractors, or which might be relevant to a determination of the projects on which the KINETIC and INTERSTATE, its employees, its subcontractors, lower-tier subcontractors or the employees of its subcontractors or lower-tier subcontractors performed work, including any records that provide the names, addresses, Social Security numbers, job classification or the number of hours worked by any one or more employee;

        1.2.    All of the KINETIC's and INTERSTATE's job files for each contract, project or job on which the KINETIC and INTERSTATE, and their employees, subcontractors, lower-tier subcontractors or the employees of their subcontractors or lower-tier subcontractors worked, including but not limited to all correspondence, agreements and contracts between KINETIC and INTERSTATE and any general contractor, subcontractor, owner, builder or developer, as well as all field records, job records, notices, project logs, supervisors' diaries and notes,

-22-

employees' diaries and notes, memoranda, releases and any other records that relate to the supervision of the KINETIC's and INTERSTATE's employees, their subcontractors, its lower-tier subcontractors or the employees of its subcontractors and lower-tier subcontractors, or the projects on which KINETIC's and INTERSTATE's employees, subcontractors, lower-tier subcontractors or the employees of their subcontractors or lower-tier subcontractors performed work;

1.3.   All of KINETIC's and INTERSTATE's records related to cash receipts, including but not limited to KINETIC's and INTERSTATE's cash receipts journals, accounts receivable journals, accounts receivable subsidiary ledgers and billing invoices for all contracts, projects and jobs on which KINETIC's and INTERSTATE's employees, subcontractors, lower-tier subcontractors or the employees of their subcontractors or lower-tier subcontractors performed work;

1.4.   All of KINETIC's and INTERSTATE's bank statements, including but not limited to those for all checking, savings and investment accounts;

1.5.   All of KINETIC's and INTERSTATE's records related to disbursements, including but not limited to vendors' invoices, cash disbursement journals, accounts payable journals, check registers and all other records which indicate disbursements;

1.6.   All collective bargaining agreements between KINETIC, INTERSTATE and any trade union, and all records of contributions by the EMPLOYERS to any trade union trust fund; and

1.7.   All records related to the formation, licensing, renewal or operation of the KINETIC and INTERSTATE.

1.8   All documents, records, other writings, including contracts, agreements,  invoices, pertaining to transfers of work, employees,

-23-

equipment, contracts, subcontracts between KINETIC and INTERSTATE, and/or use of each others' employees, equipment, contracts, subcontracts to perform work.

   1.9 All documents, records, other writings, certificates of titles relating to the ownership of equipment, and vehicles used by KINETIC and INTERSTATE in performance of their construction work on projects.

  2. For reasonable attorneys' fees and costs of suit, as required by the Agreements and provided for under 29 U.S.C. § 1132(g)(1) and/or (g)(2).

  3. For such other relief that this Court deems appropriate, pursuant to any authority of the Court, including but not limited to the authority established by 29 U.S.C. §§ 1132(g)(2)(E) and 1132 (a)(3).

## ON PLAINTIFF'S THIRD CLAIM FOR RELIEF

  1. For the issuance of injunctive relief pursuant to the Agreements and 29 U.S.C. §§ 1132(g)(2)(E) and/or 1132(a)(3) ordering the KINETIC,  INTERSTATE and their managing officers, managing employees, agents and successors, including HERNANDEZ and SOTO, as well as all those in active concert or participation with any one or more of them, to deliver, or cause to be delivered, the following to the TRUST FUNDS' offices no later than 4:30 p.m. on the 20th day of each month for the duration of the Agreements:

   1.1. Truthfully and accurately completed Monthly Report(s) covering all of the accounts with the TRUST FUNDS in existence at the time of delivery, collectively identifying all persons for whom Monthly Contributions are owed to the TRUST FUNDS for work by those persons for KINETIC and INTERSTATE for the previous month and their Social Security numbers, and, itemized by person and project, the hours of work performed for which Monthly Contributions are due;

-24-

357198.1

1.2.    An affidavit or declaration from a managing officer or other managing agent of the EMPLOYERS attesting under penalty of perjury to the completeness, truthfulness and accuracy of each Monthly Report submitted; and

1.3.    A cashier's check or checks made payable to the "Construction Laborers Trust Fund for Southern California" totaling the full amount of Monthly Contributions due to the TRUST FUNDS for the previous month (as set forth on the Monthly Report(s) submitted).

2.    For reasonable attorneys' fees and costs of suit, as required by the Agreements and provided for under 29 U.S.C. § 1132(g)(1) and/or (g)(2).

3.    For such other relief that this Court deems appropriate, pursuant to any authority of the Court, including but not limited to the authority established by 29 U.S.C. §§ 1132(g)(2)(E) and 1132(a)(3).

## ON PLAINTIFF'S FOURTH CLAIM FOR RELIEF

1.    For unpaid Monthly Contributions according to proof, including but not limited to Monthly Contributions due to the Vacation Fund and Monthly Contributions  due on public works projects owed on behalf of employees as well as other damages, and an accounting of all assets of the TRUST FUNDS which have not been turned over to the TRUST FUNDS, and any profits derived by the EMPLOYERS and HERNANDEZ, SOTO and DOE 1 through DOE 5;

2.    For personal liability of the EMPLOYERS, HERNADEZ, SOTO, and DOE 1 through DOE 5, for their breaches of fiduciary duty, pursuant to ERISA § 409(a), 29 U.S.C. § 1109(a);

3.    For reasonable attorneys' fees and costs of suit pursuant to § 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1); and

4.    For such other and further relief as the Court deems proper and just, pursuant to ERISA §§ 409(a) and 502(a)(2), 29 U.S.C. §§ 1109(a) and 1132(a)(2).

-25-

357198.1

## ON PLAINTIFF'S FIFTH CLAIM FOR RELIEF

1.     For $5,770.25 pursuant to the Settlement Agreement and applicable law, including but not limited to California Civil Code § 3302;

2.     For an additional accrued interest at the TRUST FUNDS' plan rate(s), currently 8.0%  per annum after March 27, 2019  pursuant to terms of the Settlement Agreement and applicable law, including but not limited to California Civil Code §§ 3287, 3289 and 3302.

3.     For attorneys' fees and costs of collection, pursuant to the Settlement Agreement and applicable law, including but not limited to California Civil Procedure Code § 1032(b) and California Civil Code § 1717.

4.     For such other relief that this Court deems appropriate, pursuant to any authority of the Court, including, but not limited to, the authority established by 29 U.S.C. §§ 1132(g)(2)(E) and 1132 (a)(3)(B).

## ON PLAINTIFF'S SIXTH CLAIM FOR RELIEF

1.     For at least $4,000.00 from HUDSON on its BOND, plus interest at the legal rate per annum from the date contributions became due;

2.     For the costs of suit herein;

3.     For reasonable attorneys' fees;

4.     For such other and further relief as the Court deems just and proper.

DATED: March 29, 2019                    REICH, ADELL & CVITAN
                                         A Professional Law Corporation


                                         By:   /s/ Marsha M. Hamasaki
                                               MARSHA M. HAMASAKI
                                               Attorneys for Plaintiff

357198.1